STATE OF DELAWARE, upon the relation of WILLIAM EAKIN, *vs.* DELAWARE FIRE COMPANY, No. 3. OF WILMINGTON.

1. ASSOCIATIONS—FIRE ASSOCIATION COULD EXPEL MEMBER FOR DRUNKENNESS.

Where what was done by a fire association in expelling a member for nonpayment of fines was, in regard to notice, hearing, imposition of fines, and expulsion, in accordance with the charter and by-laws, but the indirect cause of expulsion was repeated acts of intoxication, the repeated acts constituted such improper conduct as justified expulsion, and prevented reinstatement under order of court.

2. MANDAMUS—DENIAL OF WRIT NOT ASKED FOR IN REASONABLE TIME WITHIN COURT'S DISCRETION.

Courts have discretion in issuing writs of mandamus, and a writ will be denied if not asked for in a reasonable time after the alleged right has been denied.

3. MANDAMUS—WHERE NO EXCUSE SHOWN FOR UNREASONABLE DELAY IN APPLYING FOR, WRIT WILL BE DENIED.

When there has been unreasonable delay in applying for the writ, and no excuse is shown for the delay, the court may refuse the application.

4. MANDAMUS—DELAY OF EIGHT YEARS IN APPLYING FOR WRIT UNREASON-
ABLE.

A delay of eight years after expulsion from a volunteer fire association
*held* too long to invoke the issuance of a writ of mandamus to compel rein-
statement as a member.

(*March* 9, 1922)

PENNEWILL, C. J., and RICHARDS, J., sitting.

*George W. Lilly* for relators.

*Robert G. Harman* for respondent.

Superior Court for New Castle County, January Term, 1922.

MANDAMUS, No. 159, November Term, 1921.

Motion by relators to quash respondent's return.  Motion re-
fused.

The petitioner, William Eakin, was on the fourth day of
April, 1871, elected a member of the Delaware Fire Company No. 3
of Wilmington, Delaware, and later became an honorary member
of said company, the same being a voluntary fire company incor-
porated January 26, 1820, and authorized to take and hold pro-
perty real and personal.  The said corporation in pursuance of its
powers adopted a constitution, rules of order and by-laws for its
government and regulation.  The said company became possessed
of certain real estate consisting of a lot of ground whereon is a
building used as an engine house, and of certain personal property
consisting of fire apparatus, etc.  Upon the organization recently
of the fire department of the city of Wilmington under the con-
trol of the department of public safety, the purposes for which the
Delaware Fire Company No. 3 was formed and carried on have
ceased to exist, and the petitioner states he "is advised that it is
the purpose of the said company to dissolve, and that the proceeds
from the sale of the property will be distributed among the mem-
bers of said company."  In December, 1912, the relator was tried on
five charges for entering the fire house of the company in an in-
toxicated condition, and convicted.  He was subsequently expelled
from membership in said company for the nonpayment of the fines

aggregating twenty-five dollars, imposed for said offenses. The relator alleges that his expulsion was made in his absence without sufficient or proper notice to him and without just cause or provocation, but the respondent's return states that—

"What was done by the company in regard to the notice, hearing, imposition of fines and expulsion, was in strict accordance with the constitution and by-laws."

On June 7, 1921, the relator applied for reinstatement, and his application was rejected; on July 5, 1921, he again applied for reinstatement, and tendered with his application a check for the amount of his fines, but his application was again refused. The relator asks that a peremptory writ of mandamus be issued by the court directing the respondent company to reinstate him as a member. The case is before the court on a motion to quash respondent's return to the alternative writ. The constitution and by-laws of the respondent company in existence at the time the relator became a member were superseded by a new constitution and by-laws adopted in 1908. After the reincorporation of the company the new company took over the property belonging to the old company and most of the members signed the new constitution and continued as members thereunder.

PENNEWILL, C. J., delivering the opinion of the Court.

The relator bases his claims largely on the constitution, rules and by-laws in force prior to September, 1908, but respondent's return states that—

"The constitution, rules and by-laws referred to by the relator were not in force at the time he was fined and expelled, but had been repealed, and a new constitution, rules and by-laws adopted and substituted therefor since the tenth of September, 1908."

We think there was no substantial difference between the first constitution and the later one in respect to matters material to the present case, but even if there were, the relator's rights would have to be determined under the constitution in force at the time of his expulsion.

The respondent company was not a stock company. Each member was liable to such fees as the by-laws might perscribe.

A person wishing to become a member was required to pay $1.25 when proposed and $8.75 on signing the constitution. An honorary member was entitled to all the privileges of an active member, and exempt from all duties except attending two stated meetings in each year. The company owned the property it occupied.

Many of the cases cited by counsel do not appear to be relevant to the real issues in the case.

The company was not organized for profit or gain. It issued no stock, and was maintained for a public municipal purpose. It seems to be well settled that—

"Corporations organized for gain have no power of expulsion or forfeiture unless granted by their charter, or by general municipal law or by agreement. Other corporations have the power to remove members for good cause, provided they do not thereby violate charter or statutory provisions. This power need not be expressly conferred by the charter. It is incident to any corporation other than a stock corporation." 14 *Corpus Juris*, 841; *Am. & Eng. Enc. of Law*, 684-686.

[1]   Under its constitution, the company was expressly authorized to expel any member for " improper conduct or the nonpayment of fines," and no distinction was made between active and honorary members. The relator was expelled for the nonpayment of fines, and there can be no question about the company's power in that regard.   But, as above stated, he claims that the procedure was unauthorized and illegal because his expulsion was made in his absence, without sufficient or proper notice to him and without just cause or provocation. The respondent avers in its return that what was done by the company in regard to notice, hearing, imposition of fines and expulsion, was in strict accordance with the constitution and by-laws.

The court thinks it is not shown that the expulsion of the relator was illegal or improper.

While the relator was expelled for the nonpayment of fines, nevertheless the indirect cause was his repeated acts of intoxication, and if it was necessary to pass upon the question the court would be constrained to hold that continued and persistent intoxication, such as described in respondent's return, constitutes such improper conduct as would justify the expulsion of a member

of a fire company from the organization, and prevent his reinstatement under an order of the court. The conduct of the relator, as shown by the respondent's return, and which we must take to be true, was not only improper but grossly so. It is difficult to conceive of an organization in which sobriety is more essential than in a fire company organized for the protection of the property of the citizens and the public. Its business requires the services of men in the best physical condition, and intoxication is calculated not only to demoralize the members but to seriously affect the efficiency of their services. Certainly in a fire company like the respondent, intoxication should not be tolerated, and expulsion may be the only remedy. It is true the relator was not expelled directly for intoxication, but for the nonpayment of fines imposed therefor; nevertheless, the indirect cause of his expulsion was intoxication, and as the issuance of the writ prayed for lies in the sound discretion of the court, we think the court has a right to consider the real, although indirect, cause for which the relator was expelled.

[2] But even if the relator's expulsion was illegal, and his application for reinstatement wrongfully refused, there is another reason why the issuance of the peremptory writ would have to be refused, and that is, laches. It is alleged in respondent's return, and not denied, that more than eight years elapsed after the relator's expulsion before he made application to the company for reinstatement and before he filed his petition in this court. There is abundant authority to the effect that the writ of mandamus will not be issued unless asked for in a reasonable time after the wrong happened of which the relator complains. This is not because of any statute of limitation, but because the courts have a discretion in the issuance of the writ, and in the exercise of that discretion will refuse the writ if the claim has been allowed to become stale without any excuse shown for the delay, and the relator has apparently acquiesced in the wrong complained of. The rule is very clearly stated in 18 *Ruling Case Law*. 286, as follows:

"Irrespective of the question whether statutes of limitation apply to mandamus proceedings, it is well settled that an application for the writ be made

within a reasonable time after the alleged default or neglect of duty; and that laches or delay in making the application, unless satisfactorily explained, may afford sufficient cause for its denial, particularly when the delay has been prejudicial to the right of the respondent.    *   *   *   If it is apparent that the delay has not resulted in prejudice to the rights of the adverse party* * * the writ may be allowed although there has been delay in asking for it, where a reasonable excuse is given for the delay."

See 14 *Am. & Eng. Ency. Law, p.* 107, *Mandamus; Elliott Pub. Corp. p.* 385, § 298; 18 *Ruling Case Law, p.* 286; 9 *Ann. Cas.* 846, and note; *People v. Seneca Com.,* 2 *Wend.* (*N. Y.*) 264 (1 year); *Walcot v. Mayor,* 51 *Mich.* 249, 16 *N. E.* 393 (10 years); *Georges' Creek v. Allegheny Co.,* 59 *Md.* 255 (3 years); *Taylor v. Bayonne,* 57 *N. J. Law,* 376, 30 *Atl.* 431 (2 years); *People v. N. Y. Bd. Ed.,* 158 *N. Y.* 125, 52 *N. E.* 722 (6 years); *People v. N. Y. Bd. Ed.,* 114 *App. Div.* 1, 99 *N. Y. Supp.* 737 (14 mos.); *People v. Green,* 87 *App. Div.* 632, 84 *N. Y. Supp.* 1139 (6 mos.); *People v. Sturgis,* 82 *App. Div.* 580, 81 *N. Y. Supp.* 816 (17 mos.); *Murphy v. Keller,* 61 *App. Div.* 145, 70 *N. Y. Supp.* 405 (18 mos.); *Cross v. Cross,* 90 *N. C.* 15 (2 years.)

In the case of *People ex rel. Miller v. Justice, etc.,* 78 *Hun* 334, 29 *N. Y. Supp.* 157, where the relator had waited 8 months before making application for reinstatement, it was said:

"We see no reason why a party claiming the offices of the court by way of mandamus to reinstate him into a position from which he claims to have been unjustly discharged, should be allowed to wait an indefinite time before asking for the enforcement of his rights by this summary procedure."

In *People v. Sturgis, supra,* the court said:

"Under all the circumstances I think that this delay of one year and five months not only constitutes laches on his part, but may fairly be deemed an abandonment of his earlier protest against retirement and an acquiescence in the action of the fire commissioner."

In the case in 57 *N. J. Law,* 376, the court used this language:

"All this is apart from the fact that relator confessedly invited his suspension by the mayor, and so pleaded, a circumstance that cannot, it is true, be used to excuse the board for not trying him, but can and does influence the court when asked, after a lapse of three years, to place him in statu quo with respect to his right to trial before the board."

In *People v. Welde,* 28 *Misc. Rep.* 582, 59 *N. Y. Supp.* 1030, it was said:

" An unexplained delay of four months to move for mandamus to compel reinstatement to a public office from which the petitioner was removed is sufficient laches to defeat the writ."

[3, 4] Some of the authorities hold that laches on the part of the relator is a sufficient reason for refusing the writ, in analogy to statutes of limitations in civil cases, or because it would be prejudicial to the respondent; others support it on the ground that it shows acquiescence on the part of the complainant in the act of the defendant and an abandonment of his right to complain. In some cases it is held that laches is a fact or circumstance the court may consider in exercising its discretion respecting the issuance of the writ. The delay in asking for the writ varies greatly in different cases, but in no case that we have seen has the delay been as long as in the present case. The general rule seems to be that when there has been unreasonable delay in applying for the writ, and no excuse is shown for the delay, the court may in the exercise of its discretion refuse the application. After his expulsion the relator manifested no interest in the matter of his membership until he was advised that the company's property would be sold and proceeds divided among its members. Then, and not until then, did he seek reinstatement by applying to the company or to the court. No excuse is given for the delay; he could have brought his suit at any time, and his rights and interests were the same eight years ago as now. Having waited for more than eight years, and no excuse whatever being shown for the delay, we think the relator has slept upon his rights, if any he had, too long to invoke now the issuance of a writ of mandamus to compel his reinstatement as a member of the respondent company.

For the reasons given, the court is constrained to refuse the motion to quash respondent's return.